UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERESA VEGTER,

       Plaintiff,     |    CIVIL ACTION

     v.           |    NO. 1:05-CV-100-CAP

CANADA LIFE ASSURANCE COMPANY,

       Defendant.

## O R D E R

    This matter is before the court on cross motions for summary judgment by defendant Canada Life Assurance Company [Doc. No. 74] and Teresa Vegter, the plaintiff [Doc. No. 75].  Also before the court is Vegter's motion to dismiss Canada Life's summary judgment memorandum as untimely [Doc. No. 81].

## Factual and Procedural Background

### I.  Procedural History

    Vegter originally filed this action in the Superior Court of Fulton County seeking to recover short-term disability ("STD") benefits allegedly due to her under an employee welfare benefit plan ("the Plan") sponsored and maintained by her former employer, Community Health Systems, Inc. ("CHS").  She asserted state law claims for breach of contract, "mental anguish," punitive damages, attorney's fees, and costs, but made no mention of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

Canada Life removed the case to this court as <u>Vegter v. Canada Life Assurance Co.</u>, Civil Action File No. 1:04-CV-1756-CAP ("<u>Vegter I</u>"). The court dismissed Vegter's complaint without prejudice on December 23, 2004, but noted

> Plaintiff's complaint states no claim under ERISA, and Plaintiff has affirmatively stated "My claim is not 'related to ERISA' . . . ." Therefore, this order is not an adjudication with regard to any ERISA claim of the Plaintiff.

[<u>Vegter I</u>, Doc. No. 25, at p. 3, n.1].

Vegter filed the present action on January 12, 2005 [Doc. No. 1]. She subsequently filed an "Amendment to the Complaint" which added CHS as a defendant [Doc. No. 2]. Vegter did not explicitly assert a claim under ERISA, although she did allege that "Canada Life breached it's [sic] Duty of Utmost Good Faith and Fair Dealing pursuant to 29 U.S.C. 1133(1) and (2)." Am. Compl. [Doc. No. 2], p. 4. The amended complaint included a prayer for compensatory damages in the amount of $55,984.78, attorney's fees and costs of $891.89, mental anguish damages of $559,847.80, and punitive damages in the amount of $145,000,000.00.

Canada Life filed a motion for summary judgment on September 20, 2005 [Doc. No. 37]. On April 20, 2006, the court granted the motion in part and denied it in part [Doc. No. 45]. The court also granted summary judgment sua sponte to Vegter on the issue of whether her STD claim was barred by the pre-existing condition

exclusion of the Plan, and remanded the STD claim to Canada Life to determine whether Vegter's STD claim was barred under the "economic loss" provision of the Plan.

With respect to the state law claims, the Court noted that the "plaintiff's state law claims in this action are virtually identical to the claims raised in the previous action," and reiterated its conclusion that those claims were preempted by ERISA.   The court additionally held that the doctrine of res judicata barred Vegter from pursuing claims raised in her previous action, and granted summary judgment to Canada Life as to the state law claims.   Regarding Vegter's claim for long-term disability ("LTD") benefits, the court found that Vegter had never given written notice to Canada Life of her LTD claim under the terms of the Plan, and accordingly dismissed Vegter's LTD claim with prejudice.

As to the STD claim, however, the court noted that Canada Life made two arguments supporting its motion for summary judgment: (1) that Vegter's STD claim was barred because Vegter's treatment for "Anxiety State Unspecified" fell within the pre-existing condition exclusion, and (2) that Vegter's STD claim was barred because her loss of earnings was a direct result of her termination from her employment.   Applying the six-step analysis prescribed in <u>Williams v. BellSouth Telecommunications, Inc.</u>, 373 F.3d 1132, 1138 (11th

Cir. 2004), the court found that Canada Life's decision to deny Vegter's STD claim on the pre-existing condition exclusion was wrong and unreasonable.   Accordingly, the court granted summary judgment sua sponte to Vegter on that issue.

Regarding Canada Life's second argument, that Vegter's claim was barred because her loss of earnings was a direct result of her termination, the court found that Canada Life had not given Vegter an opportunity to present evidence in response to the argument, and was thus denied a fair and full review.   The court consequently remanded the economic loss issue back to Canada Life for consideration, noting that if Canada Life upheld its decision to deny benefits, Vegter could, if necessary, seek review from this court of the decision.   The court made clear that judicial review would only be available after Vegter fully exhausted the appeals process provided by the Plan.

Vegter filed a notice of appeal on May 18, 2006 [Doc. No. 47], and Canada Life filed a notice of cross-appeal on June 1, 2006 [Doc. No. 51].   On July 11, 2006, the Eleventh Circuit dismissed the parties' cross-appeals sua sponte for lack of jurisdiction, holding that this court's summary judgment order was not final or appealable.

Thereafter, pursuant to this court's April 20, 2006, order [Doc. No. 45], Canada Life considered multiple additional

submissions of evidence by Vegter in support of her claim.  After reviewing that evidence, Canada Life upheld its decision to deny STD benefits because the evidence demonstrated that Vegter's loss of income and her alleged disability were the result of her termination from her job.

Rather that seeking review of Canada Life's decision as previously prescribed by the court, Vegter filed a motion to "rescind" the court's April 20, 2006, order, and requested that the court set a date for trial [Doc. No. 62].  Canada Life opposed the motion to rescind [Doc. No. 68], and filed a motion for the court to schedule a settlement conference [Doc. No. 67].

In an August 28, 2007, order [Doc. No. 70], the court denied Vegter's motion to rescind and granted Canada Life's motion for a settlement conference.  The court noted, "Pursuant to the court's order of April 20, 2006 [Doc. No. 45], the only issue remaining before the court is a review of the defendant's denial of plaintiff's [STD] claim only after she has exhausted all of her administrative remedies provided to her under the [P]lan." Id. at 1-2.  The court advised, however, that prior to reviewing additional motions regarding the denial of Vegter's STD claim, the case would be referred to a federal magistrate judge for a settlement conference.

The case was referred to Magistrate Judge Linda T. Walker for a settlement conference scheduled for October 25, 2007 [Doc. No. 72]. The parties attended the conference, but were unable to reach an agreement. In its August 28, 2007, order, the court had specified that, should the parties fail to reach an agreement during the settlement conference, Vegter was to file a motion for summary judgment within 30 days of the conclusion of the settlement conference. Vegter did so, filing her motion for summary judgment on November 15, 2007 [Doc. No. 75]; Canada Life filed its motion for summary judgment on November 19, 2007 [Doc. No. 74].

## II.  **Material Facts**[1]

### A.  The Group Policy and Plan

Effective January 1, 2003, Canada Life issued Group Policy Number H94665-STD to CHS to fund short-term disability benefits under the Plan. The group policy included a Summary Plan Description ("SPD"). According to the SPD, a plan participant can

---

[1] The court's account of the material facts is derived largely from Canada Life's Statement of Material Facts and summary judgment brief [Doc. Nos. 74-1 and 74-2]. This court's Local Rule 56(2) requires a response to a motion for summary judgment to include "individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." Vegter failed to comply with this rule, meaning that the court "will deem each of [Canada Life's] facts admitted." L.R. 56(2)(a)(2). The court notes, however, that its acceptance of Canada Life's stated material facts as admitted will not prejudice Vegter, as the relevant facts in this case appear to be largely undisputed.

receive a maximum of 11 weeks of short-term disability after a 14-day Elimination Period if the participant meets the definition of "disabled."   Under the caption "Definition of Disability and Disabled," the SPD states that a plan participant is totally disabled if she is "unable to do the Material and Substantial Duties of [her] Own Occupation" and is "receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness."   The SPD further states that the plan participant's "loss of earnings must be a direct result of [the participant's] Sickness, Pregnancy or Injury.   Loss of earnings due to economic factors such as, but not limited to, recession, job elimination, pay cuts, and job-sharing will not be considered."   Def's 1st Mot. for Summ. J. [Doc. No. 37], at 13.

The SPD also contains specific instructions regarding the appeal process in a section entitled "IF YOUR CLAIM IS DENIED." Specifically, the SPD explains that, if a claimant wants a denial reviewed, she must submit the appeal in writing within 180 days after receiving notice of the denial.   Id., at Ex. 2, p. 39.   The SPD also advises claimants that they may give the defendant written comments and additional items to support their claim.   Id.

B.   Vegter's Disability Claims

On May 7, 2003, Vegter was hired as a critical care and emergency room nurse at Fannin Regional Hospital.   As an employee

of Fannin Regional Hospital, Vegter was a beneficiary under the Plan.

On September 26, 2003, Vegter was terminated from her employment at Fannin Regional.  After Vegter spent three weeks in bed, sleeping, refusing to eat, and hoping that she would die, her son called 911.  Although it is not entirely clear to the court, it appears that Vegter received treatment from Highland Rivers Center on October 10, 2003.  Highland Rivers' records state that Vegter had no previous "tx/hosp. for depression."

One day later, she was admitted into Peachford Behavioral Hospital Systems of Atlanta and treated by Dr. Valerie Honablue. Dr. Honablue diagnosed her with Depressive Disorder, Diagnosis Code 311, and Depression Psychosis - Severe, Diagnosis Code 296.23.  As the reason for Vegter's hospitalization, Dr. Honablue stated that she had been fired from her job, was not eating, and hoped she would die.  Vegter was discharged from Peachford on October 20, 2003.

On or about October 27, 2003, Vegter submitted a STD claim form to Canada Life.  On the claim form, Vegter claimed that she became disabled on September 26, 2003.  In connection with her STD claim, Vegter submitted an Attending Physician Statement by Dr. Charles Hendry.  Dr. Hendry reported that he initially treated Vegter for "Major Depression, Single Episode, Severe," on October

30, 2003.  Dr. Hendry attributed Vegter's depression to the following "precipitating chronological events: Termination from Work, Financial Stressors, Lack of Nuclear/Extended Support Systems."  Claim File [Doc. No. 68, Ex. 2], CL 009.  Although Dr. Hendry initially reported that he did not advise Vegter to cease work, he did state that Vegter felt she was unable to work.  He later reported that he needed more information regarding her work activities, and stated that Vegter "was unlikely to return to stressful work."  Id. at CL 010.

Because Vegter claimed a disability date of September 26, 2003, less than three months after the effective date of her coverage, Canada Life investigated whether Vegter suffered from a pre-existing condition.  The pre-existing period under the group policy and the Plan was July 1, 2002, through June 30, 2003.  In accordance with this investigation, Canada Life asked Vegter to complete a Supplemental Information Questionnaire regarding her medical providers and treatment during the pre-existing period.  Vegter responded by providing Canada Life with the names of Dr. Angela Wai and the Waianae Coast Comprehensive Health Center ("Health Center").

On December 31, 2003, a registered nurse, Dana Popovich, reviewed Vegter's medical records, including the information from Dr. Wai and the Health Center.  Ms. Popovich noted that Vegter

received psychiatric treatment from August 2002 to October 2002 due to anxiety over legal problems.  During that time, Vegter received psychiatric medication (Ambien and Lorazepam) and cognitive behavior therapy to teach her coping skills.  Similar to Vegter's 2002 treatment for anxiety, Ms. Popovich noted that Vegter's 2003 treatment for depression included psychiatric medication and cognitive behavior therapy.

Based on the records from Dr. Wai and Ms. Popovich's analysis, Canada Life denied Vegter's request for STD benefits under the group policy and the Plan on December 31, 2003.  As a ground for the denial, Canada Life pointed out that Vegter had received treatment for anxiety and "depression"[2] from Dr. Wai in August and October 2002.  Thus, Canada Life concluded that Vegter's September/October 2003 anxiety fell under the pre-existing condition exclusion.[3]

On January 21, 2004, Vegter appealed Canada Life's determination claiming that Dr. Wai's records were incomplete and inaccurate.  Vegter argued that she visited Dr. Wai not for treatment, but in search of an expert witness to testify regarding

---

[2]   Although Canada Life stated that Vegter was treated for depression, Dr. Wai's records diagnosed Vegter with "Anxiety State Unspecified," not depression.

[3]   Also in December 2003, Vegter informed Canada Life that she was diagnosed with thyroid nodule and required treatment.

the pain and suffering she suffered due to her property manager's allegedly fraudulent actions.

On February 11, 2004, Canada Life again denied Vegter's request for benefits and informed her that she could submit a written appeal along with additional medical information to support her claim that she did not receive treatment during the pre-existing period.

Approximately one month later, on March 12, 2004, Vegter appealed Canada Life's February 11 denial.  In particular, Vegter sent Canada Life a letter maintaining that she was entitled to benefits because she was not treated for a mental disorder during the pre-existing period.

After receiving Vegter's March 12 letter, Canada Life consulted an independent psychologist consultant, Dr. Shallcross, to determine whether anxiety was a mental disorder.  Dr. Shallcross responded that Vegter was diagnosed "dx 300.00 Anxiety Order Unspecified."  Dr. Shallcross further stated that Diagnosis Code 300.00 qualifies as a diagnosable "mental condition" as defined by the Diagnostic and Statistical Manual - IV.

On May 10, 2004, Vegter filed suit in state court, beginning the chain of procedural history discussed in the previous section. Following the court's April 20, 2006, remand order, Canada Life confirmed with CHS, Vegter's former employer, that she had been

-11-

terminated effective September 26, 2003.  By letter dated September 8, 2006, Canada Life informed Vegter that it had completed its review pursuant to the court's remand order and had determined that she was not eligible for STD benefits.  Specifically, Canada Life explained, in relevant part,

> According to the Disability Claim Employee Statement you completed and signed on 10/27/03, your date last worked was 9/26/03.  This date has been verified with your former employer.  On the Disability Claim Employer Statement, it is written that your date last worked was 9/26/03 and that you were terminated on that date.  The Attending Physician's Statement was signed by Charles Hendry (psychiatrist) on 11/6/2003.  It indicated that your initial date of treatment with him was on 10/30/2003.  This is 34 days after your stopped working. At that time, your primary diagnosis was major depression, single episode, severe.
>
> We also reviewed records from Peachford Behavioral Health System of Atlanta, which shows that you were hospital confined from 10/11/2003 to 10/20/2003. The records from that facility consistently indicate that you were admitted because you were fired from your job as a medical surgical nurse three weeks prior to your hospitalization.  It is noted that you reported you were terminated due to poor performance and inability to get along with other staff members.
>
> The policy under which you were covered states:
>
> Your loss of earnings must be a direct result of Your Sickness, Pregnancy or Injury.  Loss of earnings due to economic factors such as, but not limited to, recession, job elimination, pay cuts and job-sharing will not be considered.
>
> . . . Your claim file indicates that you were terminated for reasons other than those regarding any health conditions.  Moreover, the medical evidence contained within your file does not support that you met the

policy's definition of total disability on the date you
last worked.    Therefore, any loss of earnings you
suffered was not a direct result of a sickness or injury.
Instead, your loss of earnings was a result of having
been terminated for poor performance.

. . . In summary, you do not meet the definition of
disability nor were you actively at work on the date your
reported disability took place, therefore, no benefits
are payable to you.

Claim File [Doc. No. 68, Ex. 2], at CL 160-61.  Canada Life advised

Vegter of her right to appeal, and listed examples of information

she should submit to support an appeal if she chose to do so.

Vegter appealed Canada Life's decision by letter on September

13, 2006.    Therein, she referred to the affidavit of Alyssa

Cumming, R.N.N.P., and asserted that the affidavit clarified when

her illness began and the "presenting symptoms" of her illness.

Id. at CL 166.  The affidavit stated, in relevant part:

I, Alyssa Cumming, first saw Teresa Vegter as a patient
for a problem concerning her thyroid in November of 2003.
Her illness began in June of 2003 when she began to
experience symptoms of fatigue, irritability, heat
intolerance and palpitations.  It was discovered, upon
ultrasound examination, that she had a tumor in her
thyroid.  She subsequently underwent radioactive iodine
treatment, which was successful.

Vegter went on to state:

It is no fault of my own that I initially reported the
incorrect date of disability and an incorrect reason for
disability.  I was unaware myself at the time of initial
reporting that there was a very serious medical cause for
my behavior . . . .  [M]y work performance was poor
because I was ill; therefore I was terminated because I
was ill.  Therefore, my loss of earnings was a direct

-13-

result of My Sickness.

Id. Vegter also argued that her treatment began on September 30, 2003.

On October 9, 2006, Canada Life acknowledged Vegter's appeal and confirmed receipt of Ms. Cumming's affidavit.  Canada Life invited Vegter to submit any additional medical records regarding her thyroid condition so Canada Life could refer her claim to an independent medical reviewer, and asked that she do so before November 9, 2006.  Further, Canada Life requested that Vegter advise it immediately if she did not intend to submit additional evidence so that it could begin the appeal process.

Canada Life submitted Vegter's claim to an independent medical reviewer on November 28, 2006.  The reviewer noted that Vegter's thyroid levels were abnormal in October and December 2003, but opined that it was not possible to make a determination of Vegter's restrictions and limitations based on the information in the file because no medical records were submitted for June 2003, when Vegter claims that her symptoms began.  The reviewer noted, however, that thyroid conditions are generally successfully treated on an outpatient basis while the patient remains employed.

By letter dated November 30, 2006, Canada Life advised Vegter that no additional medical information had been received, and that the denial of benefits would be upheld.  Specifically, Canada Life

explained:

> According to the Disability Claim Employer Statement, you were terminated from your position 9/26/2003. Your policy has a 14 day Elimination Period during which no benefits are payable. The benefit commencement date would be 10/12/2003. You originally submitted a claim for Short Term Disability benefits based on the diagnosis of depression stating your last day worked was 9/26/2003. Currently, with your submission of Ms. Cummings' affidavit, it appears you are now claiming that your loss of earnings was a direct result of your sickness (hyperthyroidism).

> Medical records from Peachford Behavioral System of Atlanta indicate you were hospital confined from 10/11/2003 to 10/20/2003. It was noted you were fired from your job due to poor performance and the inability to get along with other staff members.

> Dr. Randall Slovis noted in his records dated 10/11/2003 that:"The patient has a history of goiter, which has had no workup other than thyroid function tests, which she states are always normal. The patient has an abnormal contoured gland, so I do not know why an endocrine referral has not been made or why a scan has not been done."

> With regard to your physical exam he noted: "Supple without masses or lymphadenopathy. The patient's right side of the thyroid gland is symmetric and smooth, but it is definitely enlarged versus the left."

> Lab work dated 10/12/2003 reported your T3 uptake as 33 (normal is 24-39), TSH as 0.004 (normal is 0.350-5.500), and Thyroxine (T4) as 14.4 (normal is 4.5-12.0). Lab work dated 12/5/03 reports T3 uptake as 14.8, and TSH as <0.01.

> A thyroid ultrasound was performed on 12/2/2003, which indicated a large primarily cystic nodule involving almost the entire right lobe of the thyroid. It was also noted you had a small hypoechoic nonspecific nodule on the mid left lobe of the thyroid.

You have submitted the affidavit of Ms. Alyssa Cumming RN NP, which indicates that she first saw your for your thyroid in November 2003. She noted your illness began June 2003 when you began experiencing symptoms of fatigue, irritability, heat intolerance, and palpitations.

On 10/9/2006, we wrote to you requesting any additional information you have in support of your thyroid condition, (including treatment notes from Nurse Cumming) that would support your thyroid condition back to June 2003. As of today, we have not received any additional information from you.

In summary, we do not have any medical documentation supporting your hyperthyroid condition back in June 2003. While the lab work from October and December 2003 do indicate some abnormal findings, these are all after your last day worked (9/26/2003). In general, thyroid conditions (both hyper and hypo) are successfully treated on an outpatient basis and are treated while remaining employed. Your file does not have any lab values or office visit notes from June 2003 when it was reported you started experiencing problems.

As stated in our 9/8/2006 letter, the medical evidence does not support the definition of Total Disability on the date you last worked. The loss of earnings you suffered were not a direct result of a sickness or injury, but as a result of being terminated due to poor performance. Your coverage terminated 9/30/2003 because it was the last day of September following your termination . . . . Therefore, no benefits are payable.

Id. at CL 174-76.

Vegter refused to submit additional medical information, and instead informed Canada Life by letter dated December 14, 2006, that no medical evidence was necessary for an independent medical consultant to review her case. Vegter's position was apparently that she should be entitled to benefits if it is possible that any

-16-

individual with hyperthyroidism might perform poorly at work.  In addition, Vegter advised Canada Life that she had been denied disability benefits by the Social Security Administration, and enclosed various documents including: a copy of a police report indicating she had been instructed not to sleep in her truck; a job description of a registered nurse for Banner Health; a Georgia Department of Human Resources Medical Statement; and copies of certain invoices.

Because Vegter complained of certain contents of Canada Life's letter dated October 9, 2006, it appeared to Canada Life that she had not received the November 30, 2006, letter upholding the denial of benefits.  Accordingly, Canada Life sent another copy of that letter to Vegter on February 22, 2007, and advised her again of her right to appeal the decision.

By letter dated March 19, 2007, Vegter wrote to Canada Life and submitted more information, including: an article entitled "Judge takes aim at disability insurers, ERISA"; a letter to Vegter dated February 8, 2007, from Albert C. Burnstein, M.D.; the curriculum vitae of Dr. Burnstein; a Memorandum Opinion for the General Counsel Department of Health and Human Services and the Senior Counsel to the Deputy Attorney General regarding the Scope of Criminal Enforcement under 42 U.S.C. § 1320d-6; an abstract of a publication entitled "Litigating Disability Insurance Claims;"

and an affidavit from Vegter regarding the circumstances of her termination from Fannin Regional Hospital.

Dr. Burnstein's letter states that Vegter asked him "to review documents relative to her claim for short-term disability and prepare an expert opinion." Claim File [Doc. No. 68, Ex. 2], at CL 216. Dr. Burnstein opined that it was "highly probable that since [Vegter's] goiter was palpable by Dr. Slovis on October 11, 2003, that the cystic masses and hyperthyroidism had been gradually worsening in the months prior to admission." Id. Dr. Burnstein further reported that "following successful treatment of her thyroid difficulties and mood disorder, [Vegter] has been able to gradually resume working as an R.N.," and that documentation provided to him indicated that Vegter was receiving positive reviews working as a nurse in Arizona. Id. at CL 0214. Finally, Dr. Burnstein concluded that it was "medically probable" that Vegter "suffered from this illness prior to and during August 2003," and that it was "medically probable" that her thyroid condition "was a significant factor in her symptoms and ultimately in her job performance." Id.

In her own affidavit, Vegter denied engaging in unprofessional conduct by "sneaking into patient records or violat[ing] patient confidentiality," and claimed that her character had been degraded

-18-

by two other nurses and she had been wrongfully terminated.  Id. at CL 195-96.

Canada Life advised Vegter by a letter dated May 25, 2007, that it had been attempting to contact her by telephone to discuss her STD claim.  Vegter responded on May 30, 2007, that she had provided everything necessary to make a decision on her claim, and that it was unacceptable to communicate in any manner other than in writing.

## Legal Analysis

**I.   Vegter's Motion to Dismiss Canada Life's Memorandum [Doc. No. 81]**

As an initial matter the court notes that Vegter's assertion that Canada Life's summary judgment brief was untimely is groundless.  Canada Life filed a motion for summary judgment within thirty days of the failed mediation with Judge Walker, which was the deadline set by the court in its August 28, 2007, order [Doc. No. 70].  Vegter's motion is therefore DENIED.

**II.  Cross Motions for Summary Judgment [Doc. Nos. 74 and 75]**

A.   Summary Judgment Standard

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The movant carries the initial burden and must show the court that there is "an absence of

-19-

evidence to support the nonmoving party's case." <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." <u>Id.</u> When, as here, a district court is presented cross motions for summary judgment on the same issues, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2720, at 335-36 (3d ed. 1998) (footnote omitted).

B.   <u>ERISA Burden of Proof</u>

ERISA itself provides no standard for reviewing decisions of plan administrators or fiduciaries.  <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 (1989).  But the Eleventh Circuit has read <u>Firestone</u> to have established three distinct standards for reviewing administrators' plan decisions: "(1) de novo where the plan does not grant the administrator discretion [i.e., does not exercise discretion in deciding claims]; (2) arbitrary and capricious [where] the plan grants the administrator [such] discretion; and (3) heightened arbitrary and capricious where [the plan grants the administrator such discretion but] . . . [it has] . . . a conflict of interest."  <u>Williams v. BellSouth Telecommunications, Inc.</u>, 373 F.3d 1132, 1134 (11th Cir. 2004).

Because the distinctions between these three standards can be difficult to discern, the Eleventh Circuit in <u>Williams</u> incorporated the three levels of review into a multi-step approach for reviewing ERISA-plan benefit denials:

> (1)   Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "de novo wrong," then determine whether it was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)  If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review its decision under the more deferential arbitrary and capricious standard).

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if it operated under a conflict of interest.

(5)  If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Id. at 1137-38.

C.  Application

The sole remaining issue in this litigation is whether Vegter is entitled to STD benefits.  The only Williams step necessary in

-22-

the court's analysis is the first one – applying a de novo standard to determine whether Canada Life's benefits denial decision was wrong.  Williams, 373 F.3d at 1138.  A de novo examination reveals that it was not.

The evidence in the record is clear that Vegter's loss of income was not attributable to her alleged disability; it was due to her termination.  The Plan explicitly provides that a participant's "loss of earnings must be a direct result of [her] Sickness, Pregnancy, or Injury.  Loss of earnings due to economic factors such as, but not limited to, recession, job elimination, pay cuts and job-sharing will not be considered."  SPD [Doc. No. 37, Ex. 2], at 13.  All of the relevant medical records indicate that Vegter's depression – the only disability she alleged until the case was remanded back to Canada Life in April 2006[4] – resulted from her termination from CHS.  Both of the physicians who treated her for depression, Drs. Honablue and Hendry, opined that Vegter's depressive episode was triggered by her termination.  Vegter cannot now claim that her loss of earnings was due to depression when she

---

[4] Vegter has vigorously denied that her anxiety issues, for which she received treatment from August 2002 to October 2002, constituted a disability or are related to the current case in any way.  In fact, she contended that these doctor visits were solely for the purpose of securing the physician as an expert witness in unrelated litigation.  Accordingly, the court will not consider Vegter's anxiety issues in connection with its analysis.

reported to her physicians that the depression was *caused* by her termination from employment.

On remand, Vegter did not present *any* evidence that she was disabled from her position prior to her termination for poor performance.  Instead, she attempted for the first time to link her poor performance to hyperthyroidism in an effort to infer that she was actually terminated for medical reasons.  The only relevant evidence she presented, however, was the affidavit of Alyssa Cumming and the letter from Dr. Burnstein.  Ms. Cumming explicitly stated that she did not treat Vegter until November 2003.  The statements by Ms. Cumming regarding Vegter's symptoms in June 2003 are supported by nothing but Vegter's self-reports, not by lab results, office notes, or any other type of objective evidence.  Ms. Cumming's affidavit does not demonstrate that Vegter's loss of earnings was a direct result of sickness.

Neither does Dr. Burnstein's letter advance Vegter's cause.  Because Vegter's claims arise under section 502 of ERISA, she bears the burden of proving that she was entitled to receive STD benefits under the Plan.  See Horton v. Reliance Standard Life Insurance Co., 141 F.3d 1038, 1040 (11th Cir. 1998).  Dr. Burnstein could not state unequivocally that Vegter's loss of earnings was caused by sickness.  Rather, he merely concluded that it was "medically probable" that she had hyperthyroidism in August 2003.  Claim File

[Doc. No. 68, Ex. 2], at CL 214.  Dr. Burnstein introduced no evidence that Vegter had any restrictions or limitations that prevented her from performing her job such that she would meet the Plan's definition of disabled at the time she was fired.  Indeed, as Canada Life's independent medical reviewer noted, thyroid conditions are generally successfully treated on an outpatient basis while the patient remains employed.  Nothing about Dr. Burnstein's post hoc generalizations regarding the symptoms of hyperthyroidism definitively establishes that Vegter was fired as a direct result of her purported sickness.

Vegter alleged for the first time in her response to Canada Life's motion for summary judgment that "Canada Life did not apply the Concurrent Disabilities provision in their determination of when [she] was first seen by a physician for a disability."  Resp. Br. [Doc. No. 81-2], p. 4.  This argument fails for two reasons.

First, Vegter never presented this argument to Canada Life at the administrative stage, meaning Canada Life never had a chance to consider whether the Plan provision referred to by Vegter would apply to the case or yield the outcome she seeks.  "Accordingly . . . , it is simply impossible to find that [Canada Life] 'abused its discretion' in not considering evidence or argument which was never *presented* to the administrator.  [Canada Life] was never given the *opportunity* to 'abuse its discretion' on this issue.

-25-

<u>Alford v. DCH Foundation Group Long-Term Life Insurance Co. of America</u>, 144 F. Supp. 2d 1183, 1213-14 (C.D. Cal. 2001) (emphasis in original).

Second, even if Vegter had properly raised the concurrent disability issue during Canada Life's review of the claim, it is clear that the provision had no application to Vegter's claim. The provision she refers to, entitled "CONCURRENT DISABILITY," reads as follows:

> If a new Disability occurs while Weekly Income Benefits are payable, it will be treated as part of the same period of Disability and is subject to **both** the following:
>
> 1.   The Maximum Benefit Period; **and**
>
> 2    Exclusions and limitations provisions.

Group Policy [Doc. No. 68, Ex. 1], p. 14.  The plain purpose of the concurrent disability provision is to preclude a claimant from receiving more than the maximum benefit period by claiming successive periods of disability due to different conditions. Accordingly, this provision is inapplicable and provides no support for Vegter's claim.

For these reasons, upon a de novo review, the court cannot find that Canada Life's decision to deny STD benefits to Vegter was wrong.  <u>Williams</u>, 373 F.3d at 1137-38.  Vegter's loss of earnings was directly caused by her termination, and consequently was not

covered by the Plan.   Vegter's post hoc allegations of hyperthyroidism are largely irrelevant and appear to have been introduced solely to bolster a claim that appeared more and more likely to fail.   Accordingly, the court will end its inquiry and affirm Canada Life's decision.   Id.

D.   Vegter's Constitutional Challenge

On December 26, 2007, Vegter filed a "Notice of Constitutional Challenge" [Doc. No. 83] wherein she asks the court to refer her case to the Attorney General based on her contention that ERISA violates her Seventh Amendment right to have a jury determine her claim against Canada Life for fraud.   This pleading is plainly meritless.

The Seventh Amendment to the United States Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

"By using the phrase 'suits at common law,' the Constitution mandates jury trials for legal actions but not for equitable actions." Lebow v. American Trans Air, Inc., 86 F.3d 661, 667 (7th Cir. 1996) (citing Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990)).   A claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is an equitable action; therefore, a

claimant is not entitled to a jury trial under the Seventh Amendment.  <u>See</u> <u>Howard v. Parisian, Inc.</u>, 807 F.2d 1560, 1566-67 (11th Cir. 1987).  The court will thus disregard Vegter's notice of constitutional challenge.

## <u>Conclusion</u>

For the reasons stated herein, Canada Life's motion for summary judgment [Doc. No. 74] is hereby **GRANTED**, and its decision to deny Vegter STD benefits is upheld.  Vegter's motion for summary judgment [Doc. No. 75] and motion to dismiss the defendant's memorandum [Doc. No. 81] are hereby **DENIED**.  The clerk is instructed to close the file.

SO ORDERED, this <u>9th</u> day of June, 2008.

<u>/s/Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL JR.
United States District Judge